# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

ANTHONY EL-KHOURI,

    Plaintiff,

v.                                        Case No. 6:23-cv-1162-RBD-RMN

EASTERN FLORIDA STATE
COLLEGE BOARD OF TRUSTEES,

    Defendant.
_____

## ORDER

Before the Court are Defendant Eastern Florida State College Board of Trustees' Motion for Summary Judgment (Doc. 32) and Motion to Strike (Doc. 43).

## BACKGROUND[1]

In this employment discrimination case, Plaintiff Anthony El-Khouri is a Lebanese man who grew up in Melbourne, Florida. (Doc. 32-1, p. 14:6–15.) Nearly all his life, El-Khouri's mother worked in the library of the Melbourne campus of Eastern Florida State College ("College"), and he grew up visiting the College and hoping to work there. (*Id.* at 13:4–14, 32:4–19.) Years later, after El-Khouri earned his medical doctorate, the College hired him as an adjunct professor to teach

---

[1] The facts recited here reflect El-Khouri's best case as the nonmovant. *See Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1341 (11th Cir. 2022).

science courses at the Melbourne campus during the 2018 spring semester. (*Id.* at 27:23–24, 49:21–24.) The College maintains four campuses: Titusville, Cocoa, Melbourne, and Palm Bay. (Doc. 37-9, p. 31.)

But El-Khouri's first semester did not go as smoothly as he hoped, as nine students complained to the College about him or his courses. (Doc. 32-4, p. 10:1–3.) Students alleged overly difficult coursework, the use of profanity in class, and other unprofessional behavior. (*Id.* at 14:25–15:9, 19:6–15; *see* Doc. 37-9, pp. 13–27.) Five of the nine complaints stemmed from an alleged confrontation between El-Khouri and a student during class that resulted in the College security department's involvement. (Doc. 32-4, pp. 13:24–14:22; *see* Doc. 37-9, pp. 13–27.) One student, however, came forward to share positive comments about El-Khouri. (Doc. 32-4, p. 21:16–24.)

Barbara Kennedy, the Associate Provost of the Melbourne campus, received and recorded each student complaint. (Doc. 32-2, pp. 19:24–20:3; Doc. 32-4, pp. 6:16–20, 9:16–17.) Kennedy discussed the complaints with Sandy Handfield, then Provost at Melbourne. (Doc. 32-2, pp. 7:4–7, 20:4–7.) Kennedy and Handfield decided El-Khouri should be removed fromthe summer 2018 schedule at the Melbourne campus. (Doc. 32-1, p. 53:16–23; Doc. 32-2, p. 20:8–12.) El-Khouri called Scott Herber, his department chair, to ask why he was taken off the schedule, and Herber told him it was because of "whiny students." (Doc. 32-1, p. 53:16–24.)

But El-Khouri did not give up; he tried again at another campus. Dedra Sibley, Provost of the Cocoa campus, approved El-Khouri to teach a full courseload there for the fall 2018 semester. (*Id.* at 68:5–11, 70:4–8.) El-Khouri successfully taught as an adjunct that fall and the following summer. (*Id.* at 68:5–11, 72:6–16.) El-Khouri then sought a full-time contract at Cocoa ahead of the fall 2019 semester. (*Id.* at 73:5–9.) Herber, his old chair at Melbourne, served as a reference. (Doc. 37-1, ¶ 23.) But Handfield, the administrator who handled the complaints against him at Melbourne, told Sibley about his negative history. (Doc. 37-4, ¶ 8.) Sibley chose to hire El-Khouri anyway, awarding him a yearlong full-time contract. (*Id.* ¶¶ 6, 9; Doc. 32-1, pp. 72:24–73:3.)

El-Khouri continued to teach at Cocoa, and his annual contract was renewed for 2020–2021 and 2021–2022. (Doc. 32-6, ¶¶ 8, 9.) During the 2021–2022 year, El-Khouri applied for and was granted, without incident, a transfer back to Melbourne. (Doc. 32-1, p. 82:16–25.) El-Khouri's direct supervisor then observed his classes, gave him a satisfactory evaluation, and recommended another renewal. (Doc. 39-1, p. 3.) But late in spring 2022, El-Khouri was notified that his contract would not be renewed for 2022–2023. (Doc. 32-1, pp. 90:16–20, 91:17–22.)

This non-renewal occurred after significant organizational changes at the College that had been brewing for the past year. Starting in July 2021—after renewal decisions for 2021–2022 had already been made—the College reorganized

3

to create a dean position for each campus. (Doc. 37-9, p. 31.) Each dean served as that location's administrator and reported to the new Associate Vice President of Academic Affairs—a role given to Handfield. (*Id.* at 32.) In this new position, Handfield reported to Randall Fletcher, the Vice President for Academic and Student Affairs. (Doc. 32-2, p. 18:4–6; *see* Doc. 32-7.) In this new structure, Handfield and Fletcher determined which professors to recommend to the College President for annual contract renewals. (Doc. 32-5, ¶¶ 14–16, 19.) The President retained final approval. (*See* Doc. 32-9, ¶ 6.) Handfield's first time participating in this process was during the spring 2022 semester, when El-Khouri's contract was up for renewal. (*See* Doc. 32-5, ¶ 17.)

According to the College, Handfield discussed the fall 2018 student complaints and her concerns about El-Khouri with Fletcher, and these concerns led to their recommendation that the President not renew his contract, which the President approved. (*Id.* ¶¶ 18–19; Doc. 32-9, ¶¶ 5–6.) Contrary to the College's usual practice, neither of El-Khouri's supervisors were involved in the discussion of his non-renewal. (Doc. 37-4, ¶¶ 12–13, 16.)

In April 2022, Handfield and Fletcher met with El-Khouri and notified him of the non-renewal. (Doc. 32-1, p. 91:17–22; Doc. 32-2, p. 21:2–11.) In the meeting, El-Khouri accused Fletcher and Handfield of discrimination, asking if his contract was not renewed because—among other things—he is Arab and Lebanese.

4

(Doc. 32-1, pp. 97:20–98:3, 100:12–13; Doc. 32-2, p. 21:19–21.) Fletcher did not respond. (Doc. 32-1, p. 100:18–19; Doc. 32-2, p. 21:22–25.) El-Khouri's classes scheduled for summer 2022 were either canceled or taught by a white professor. (Doc. 32-3, ¶ 6.)

El-Khouri immediately filed a grievance with the College, alleging Handfield had it out for him since he began teaching. (Doc. 32-1, pp. 102:12–14, 145:2–147:22; Doc. 32-13.) Handfield told Herber, El-Khouri's former chair, that she was not happy El-Khouri managed "to get past" her when he was hired at Cocoa. (Doc. 37-1, ¶ 21.) Herber also heard Handfield refer to El-Khouri's mother as "a pain in the ass" due to her "culturally related" behavior. (*Id.* ¶ 22.)

The grievance process contained multiple steps, allowing for three separate reviews. The first reviewer denied El-Khouri's grievance. (Doc. 32-1, pp. 108:3–10.) Despite being a part of the conduct grieved, the second reviewer was Handfield; she also denied his grievance. (*Id.* at 111:23–113:14.) But the third reviewer, the Vice President of External Affairs, granted El-Khouri's grievance. (*Id.* at 113:22–114:1, 115:24–116:2.) So the College reinstated El-Khouri before fall 2022. (*Id.* at 119:18–21.) The Vice President of External Affairs apologized to El-Khouri for how he was treated and told him Handfield should have reinstated him during the second review. (Doc. 37-3, ¶ 7.) The College later renewed El-Khouri's contract for 2023–2024. (Doc 32-1, pp. 129:9–12.) Ahead of 2024–2025, El-Khouri applied for

5

and was awarded a continuing contract, which is essentially tenure. (Doc. 32-12; Doc. 32-3, p. 25:17–19.)

Around the same time El-Khouri filed his grievance, he also filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") alleging discrimination based on his Lebanese or Arab national origin in violation of Title VII of the Civil Rights Act of 1964. (Doc. 37-6.) The EEOC issued El-Khouri a right-to-sue notice. (Doc. 1-3.)

El-Khouri then filed this lawsuit against the College, alleging his non-renewal constituted national origin discrimination in violation of Title VII (Count I) and the Florida Civil Rights Act ("FCRA") (Count II). (Doc. 1.) The College now moves for summary judgment on both claims. (Doc. 32.) El-Khouri opposes. (Docs. 37–39.) The College also moves to strike certain portions of the record El-Khouri submitted with his response. (Doc. 43.) El-Khouri opposes. (Doc. 44.) The matters are ripe.

## STANDARDS

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the

nonmovant. *Battle v. Bd. of Regents for Ga.*, 468 F.3d 755, 759 (11th Cir. 2006). Then the court must decide whether there is "sufficient disagreement to require submission to a jury." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (cleaned up).

## ANALYSIS

### I. Motion to Strike

The College moves to strike Herber's affidavit (Doc. 37-1), Teresa Jones's affidavit (Doc. 37-2), and portions of El-Khouri's affidavit (Doc. 37-3). (Doc. 43.)

### A. Jones

As to Jones, an administrator El-Khouri points to as a comparator, the College argues her affidavit must be stricken because El-Khouri did not disclose her as a witness. (Doc. 43, p. 8.) El-Khouri argues that "he did not know" Jones was a potential witness until after the College moved for summary judgment, blaming the College's objections to discovery requests.(Doc. 44, p. 6.) Federal Rule of Civil Procedure 26 requires each party to disclose the names of individuals likely to have discoverable information. Fed. R. Civ. P. 26(a)(1)(A)(i). An undisclosed witness cannot "supply evidence on a motion . . . unless the failure was substantially justified or is harmless," which the non-disclosing party bears the burden of proving. Fed. R. Civ. P. 37(c)(1); *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009). Here, El-Khouri never moved to compel the

7

College's response to his discovery requests and discovery closed well before the College moved for summary judgment, so he cannot blame discovery disputes for his failure to disclose Jones. (*See* Doc. 19, p. 3); *Lawver v. Hillcrest Hospice, Inc.*, 300 F. App'x 768, 770 (11th Cir. 2008) (summary judgment affidavit by undisclosed witness properly stricken where there was no adequate explanation for failure to disclose). Jones's affidavit (Doc. 37-2) is due to be stricken.

### B. Herber

Next, the College argues Herber's affidavit should be stricken because he stated that the information was to the "best of his knowledge" instead of "to his knowledge." (Doc. 43, pp. 6–7 (citing *Rolison v. Sterling*, No. 08-0389, 2009 WL 2514294, at *6 (S.D. Ala. Aug. 13, 2009) (striking affidavits when the affiant used "qualifying phrases" such as "to the best of my knowledge")).) "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Here, Herber properly swears that he has personal knowledge in the paragraph following the challenged language, so striking the whole affidavit on this ground would be unduly harsh and not in keeping with the rules. (*See* Doc. 37-1, ¶¶ 1, 2); *Hughes v. Amerada Hess Corp.*, 187 F.R.D. 682, 685 (M.D. Fla. 1999) (declining to strike affidavit on "hyper-technical" grounds). So the Court declines

to strike his affidavit on these grounds.

Alternatively, the College argues that ¶ 24 of Herber's affidavit should be stricken because he was not employed at the College at the time of the referenced employment decision—Handfield recommending termination of an Asian-American teacher—so he purportedly has no personal knowledge of the event. (Doc. 43, p. 7 (citing *Broughton v. Sch. Bd. of Escambia Cnty.*, 540 F. App'x 907 (11th Cir. 2013) (unpublished)).) "A non-conclusory affidavit which complies with Rule 56 can create a genuine dispute concerning an issue of material fact, even if it is self-serving and/or uncorroborated." *United States v. Stein*, 881 F.3d 853, 858–59 (11th Cir. 2018). Here, the College's cited[2] unpublished case law is inapposite because Herber does not claim to know Handfield's reasons for recommending the termination—an intent issue he could not reasonably have personal knowledge to substantiate. (*See* Doc. 37-1, ¶ 24); *cf. Broughton*, 540 F. App'x at 911. But Herber properly avers he does have personal knowledge about the fact of the employment decision even though he had retired by that point, so *Broughton* is inapposite and this portion of Herber's affidavit will be considered.

But the final two paragraphs of Herber's affidavit, stating his belief and

---

[2] The College's other cited case law is similarly distinguishable. *Cf. Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1249–50 (11th Cir. 2007) (affiant not present at meeting they testified about); *Story v. Sunshine Foliage World, Inc.*, 120 F. Supp. 2d 1027, 1033 (M.D. Fla. 2000) (addressing inapplicable hearsay issue).

opinion that the College discriminated against El-Khouri (Doc. 37-1, ¶¶ 25, 26), are a different story. (*See* Doc. 43, p. 8.) "Even if the affidavit is otherwise based upon personal knowledge (that is, includes a blanket statement within the first few paragraphs to the effect that the affiant has 'personal knowledge . . . '), a statement that the affiant *believes* something is not in accordance with the Rule." *Pace v. Capobianco*, 283 F.3d 1275, 1279 (11th Cir. 2002) (emphasis added). Here, these portions of Herber's affidavit are improper belief evidence on their face, so they will be stricken.

### C. El-Khouri

Finally, the College argues that ¶¶ 8–13 of El-Khouri's affidavit must be stricken because he lacks personal knowledge of the College's employment decisions. (Doc. 43, pp. 4–6.) But here, like with Herber, because El-Khouri attests to his personal knowledge of his colleagues' employment—and the College has not provided sufficient reason to doubt his personal knowledge or to consider the whole affidavit a sham—the affidavit may be considered. (Doc. 37-3, ¶¶ 8–13); *see Stein*, 881 F.3d at 858; *cf. Grady v. BellSouth*, 160 F. App'x 863, 865 (11th Cir. 2005) (striking affidavit where witness did not testify she had personal knowledge of the relevant employment criteria).

## II. Exhaustion

As a threshold matter, the College argues El-Khouri's claims are barred

because he failed to properly exhaust his administrative remedies for both his federal and state claims. (Doc. 32, p. 8.)

### A. Federal Law

First, the College argues El-Khouri's Title VII claim is barred because the EEOC, not the Department of Justice ("DOJ"), issued his right-to-sue letter. (Doc. 32, p. 9.) El-Khouri concedes the DOJ did not issue a right-to-sue letter but argues this requirement should be waived because he did obtain a letter from the EEOC. (Doc. 38, p. 12.)

While Title VII itself provides that plaintiffs bringing cases against government subdivisions must get right-to-sue letters from the DOJ, the DOJ has taken the position based on regulatory authority that it will not issue the letters because the EEOC should issue them. *See* 42 U.S.C. § 2000e-5(f)(1); *see Fouche v. Jekyll Island-State Park Auth.*, 713 F.2d 1518, 1524 (11th Cir. 1983). So the Eleventh Circuit has waived the statutory requirement for a DOJ letter when plaintiffs have gotten EEOC letters instead. *See Fouche*, 713 F.2d at 1526; *Solomon v. Hardison*, 746 F.2d 699, 701 (11th Cir. 1984). District courts have since extended this waiver to plaintiffs who received an EEOC letter devoid of instruction to contact the DOJ.

Here, the EEOC did not direct El-Khouri to contact the DOJ nor did it refer his complaint to the DOJ (*see* Doc. 1-3), so he was "working under the understandable assumption that [his] receipt of a right-to-sue letter from the

11

EEOC signaled the end of the administrative exhaustion process." *Keith v. Talladega City Bd. of Educ.*, No. 1:18-cv-01311, 2021 WL 913481, at *7 (N.D. Ala. Mar. 10, 2021). And barring El-Khouri's claim because he did not pursue a DOJ letter after receiving his EEOC letter would significantly prejudice him because the statute of limitations has run. (Doc. 38, p. 12); *see* 42 U.S.C. § 2000e-5(e)(1). Considering the DOJ's position of not issuing right-to-sue letters when the EEOC has already done so, *see Solomon*, 746 F.2d at 702, the Court need not require El-Khouri to attempt this futile exercise. So the DOJ letter requirement is equitably waived, and the Court will consider El-Khouri's Title VII claim on the merits.

### B. State Law

Next, the College argues El-Khouri's FCRA claim is barred because he did not assert a FCRA violation in his EEOC Charge of Discrimination, as some Florida appellate courts require. (Doc. 32, p. 10.) El-Khouri, relying on other Florida appellate courts, counters that an explicit mention of FCRA is not required. (Doc. 38, p. 13.)

"[A]bsent a decision from the [Florida Supreme Court] on an issue of state law, [this Court] is bound to follow decisions of [Florida's] intermediate appellate courts unless there is some persuasive indication that the [Florida Supreme Court] would decide the issue differently." *McMahan v. Toto*, 311 F.3d 1077, 1080 (11th Cir. 2002). "The decisions of the district courts of appeal represent the law of Florida

unless and until they are overruled by [the Florida Supreme Court]." *Stanfill v. State*, 384 So. 2d 141, 143 (Fla. 1980). Where there is an unresolved conflict between the District Courts of Appeal ("DCA"), the court must predict how the Florida Supreme Court would resolve it. *See Newhouse v. Fla. Aid to Animals Spay/Neuter Med. Facility, Inc.*, No. 6:13-cv-1720, 2013 WL 6096328, at *1 (M.D. Fla. Nov. 20, 2013) (Dalton, J.).

Two DCAs are in certified conflict as to whether a plaintiff must specifically allege a FCRA violation in his charge of discrimination. *See* Fla. Stat. § 760.11(1). *Compare Belony v. N. Broward Hosp. Dist.*, 374 So. 3d 5, 6–7 (Fla. 4th DCA 2023) (yes), *with Ramos v. Steak N Shake, Inc.*, 376 So. 3d 100, 104–05 (Fla. 2d DCA 2023) (no). The Florida Supreme Court has taken up this conflict but has not yet resolved it. *See Steak N Shake, Inc. v. Ramos*, No. SC2024-0099, 2024 WL 1550904, at *1 (Fla. Apr. 9, 2024). But as signaled during oral argument,[3] the Florida Supreme Court will likely affirm the Second DCA's decision and hold that a Charge of Discrimination that (1) is dually filed with the EEOC and the FCHR, and (2) includes the facts required by Florida Statutes § 760.11(1), satisfies FCRA's administrative exhaustion requirement, regardless of whether it explicitly mentions FCRA. *See Ramos*, 376 So. 3d at 104. As the Second DCA explained:

---

[3] *See* Florida Supreme Court, *Oral Arguments: Wednesday, November 6, 2024*, YOUTUBE (Nov. 7, 2024), https://youtu.be/-Nex0_LrMck?si=JJ7QrbaVTg_zS-x7&t=1920.

13

> If the legislature intended for the statutory language in section 760.11 to require that the aggrieved party specifically allege in the complaint that his or her claims were under the FCRA, it could have said so, but it did not. And in finding that [the plaintiff] failed to exhaust his administrative remedies by failing to specifically allege in his charge of discrimination that his claims were under the FCRA, the trial court added a requirement that is not found anywhere within the statute and contravenes the legislature's clear intent that the statute be interpreted liberally.

*Id.* Based on this reasoning and the Florida Supreme Court's signaling, the Court concludes the Florida Supreme Court will not require a plaintiff to mention FCRA in his EEOC claim to properly exhaust his administrative remedies.

Here, El-Khouri's Charge of Discrimination was filed with the EEOC and the FCHR and includes the facts required by the statute. (Doc. 32-13.) So this dual-filed grievance sufficiently exhausted El-Khouri's administrative remedies, and the Court will consider his FCRA claim on the merits. *See Ramos*, 376 So. 3d at 104; *see also Taylor v. Fla. E. Coast Ry. Corp.*, No. 1:24-cv-21329, 2024 WL 3829966, at *3 (S.D. Fla. Aug. 15, 2024) (applying *Ramos*).

## III.   Discrimination

Turning to the merits, El-Khouri claims that the College did not renew his contract because of his Arab and Lebanese national origin in violation of Title VII and FCRA.[4] (*See* Doc. 1.)

---

[4] Claims brought under Title VII and FCRA are analyzed under the same framework. *Fla. State Univ. v. Sondel*, 685 So. 2d 923, 925 n.1 (Fla. 1st DCA 1996). So El-Khouri's claims will be discussed together.

Title VII prohibits discrimination by an employer based on the employee's race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(a)(1). "[T]o survive summary judgment, a plaintiff alleging intentional discrimination must present sufficient facts to permit a jury to rule in [his] favor." *Lewis v. City of Union City*, 918 F.3d 1213, 1220 (11th Cir. 2019). These facts may come through direct or circumstantial evidence. *See Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022).

In cases involving only circumstantial evidence, such as this one, a plaintiff may survive summary judgment by satisfying the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Lewis*, 918 F.3d at 1220. Under *McDonnell Douglas*, the plaintiff must first establish a prima facie case of discrimination, meaning he must show he was: (1) a member of a protected class; (2) qualified; (3) subjected to an adverse employment action; and (4) treated differently than similarly situated employees outside of his protected class. *Id.* at 1220–21. The burden then "shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1221. If the defendant meets its burden, the burden shifts back to the plaintiff to "demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination." *Id.*

As to El-Khouri's prima facie case, the College contests only the last element, arguing that El-Khouri fails to produce evidence of similarly situated comparators who were treated more favorably. (Doc. 32, p. 13.) El-Khouri first points to

15

Islam Shimy, a male professor of Arab descent, and Phaedra Williams, a female African-American professor, as appropriate comparators because their employment at Melbourne ended around the same time as his—also purportedly because of discrimination. (Doc. 32-1, p. 149:16–17; Doc. 32-9, ¶ 8; Doc. 37-3, ¶ 13; Doc. 38, p. 15.) But comparators must have been treated *more favorably* than the plaintiff to be relevant under *McDonnell Douglas*, so Shimy and Williams fail as comparators under this framework. *See Lewis*, 918 F.3d at 1222.

El-Khouri does point to potential comparators treated more favorably: Alan Spindler and Christopher Petrie, white male science professors who had numerous student complaints but were not terminated or non-renewed, and Billy Fried, a white male professor awarded tenure at Melbourne despite previous performance complaints at another campus.[5] (Doc. 37-3, ¶¶ 8–9.) Comparators must be "situated in all material respects." *Lewis*, 918 F.3d at 1226 (cleaned up). This is "a high bar." *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 947 (11th Cir. 2023). An appropriate comparator should have "engaged in the same basic conduct," operated under the same "employment policy, guideline, or rule," shared

---

[5] The College's argument that these comparators should not be considered because El-Khouri did not mention them during his deposition fails. (*See* Doc. 42, p. 4.) Courts may strike an affidavit that includes an "inherent inconsistency" with the affiant's deposition. *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1316 (11th Cir. 2007). But this does not extend to "every failure of memory or variation." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953–54 (11th Cir. 1986). Here, El-Khouri's affidavit is additive, not contradictory, so the Court will consider it.

16

"employment or disciplinary history," and typically had the same supervisor. *Lewis*, 918 F.3d at 1227–28. Here, for Spindler and Petrie, the record lacks detail as to which campus they worked on, how long they worked there, and who made their employment decisions. *See Lewis*, 918 F.3d at 1226 (need shared employment history). Fried is closer, but the record lacks detail as to whether he received complaints from students or only from a former supervisor. *See id.* (need same conduct or misconduct as plaintiff). So El-Khouri fails at the comparator element of a prima facie case under *McDonnell Douglas*.

But *McDonnell Douglas* is not the only lens through which to analyze whether a plaintiff has satisfactorily shown discrimination to survive summary judgment—a plaintiff may also present a "convincing mosaic of circumstantial evidence," which is "enough evidence for a reasonable factfinder to infer intentional discrimination." *Tynes*, 88 F.4th at 946 (cleaned up). A convincing mosaic may include: "(1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) systematically better treatment of similarly situated employees, and (3) pretext." *Jenkins*, 26 F.4th at 1250 (cleaned up). And even if comparators are not similarly situated enough to pass muster under *McDonnell Douglas*, they are still relevant—and it is up to the jury to decide how much weight to give them. *See Tynes*, 88 F.4th at 947. Weaknesses in the employer's proffered reason and the employer's deviation from

17

its policies are also relevant. *See Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010); *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1299 (11th Cir. 2006). So are racial comments unrelated to the employment decision even if they do not constitute direct evidence of discrimination. *Jenkins*, 26 F.4th at 1251; *see also Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1292 (11th Cir. 1998).

Here, while the College asserts it did not renew because of the 2018 complaints (Doc. 32, p. 15), the record presents a convincing mosaic from which a reasonable jury could find the College's reason is pretext for national origin discrimination. The record shows:

- The student complaints occurred years before the non-renewal
- El-Khouri taught without incident at both Cocoa and Melbourne for years after the complaints
- Multiple white professors (Spindler, Petrie, and Fried) were renewed or tenured despite complaints
- Another Arab professor (Shimy) was not renewed by the same decisionmaker at the same time as El-Khouri
- Handfield did not consult El-Khouri's direct supervisors, who recommended renewal, in making the decision—against usual practice
- Handfield was upset that El-Khouri "got past her"
- Handfield commented that El-Khouri's mother, an Arab woman, was a pain because of her "culture"[6]
- Handfield was a part of the grievance process even though she was the subject of it, and she rejected the grievance
- The College granted El-Khouri's grievance, reinstated him, apologized

---

[6] To the extent the College argues Handfield's comments are hearsay (*see* Doc. 42, p. 6), hearsay may be considered on summary judgment if it "could be reduced to admissible evidence at trial or reduced to admissible form." *Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999) (cleaned up). The hearsay exception for admissions by a party opponent extends to "statements made by a supervisor who has a role in the decision-making process." *Horne v. Turner Constr. Co.*, 136 F. App'x 289, 292 (11th Cir. 2005); *see* Fed. R. Evid. 801(d)(2)(D). Because these statements could be reduced to admissible evidence at trial, the Court considers them on summary judgment.

for how he was treated, and noted Handfield should have granted the grievance

(*See* Doc. 32-1, pp. 82:16–25, 119:18–21; Doc. 32-4, p. 10:1–3; Doc. 32-6, ¶¶ 8, 9; Doc. 37-1, ¶¶ 21, 22; Doc. 37-3, ¶ 9; Doc. 39-1, p. 3.) On these facts—taken as a whole and construed in the light most favorable to El-Khouri—a reasonable factfinder could conclude that Handfield recommended the College not renew El-Khouri because of discrimination rather than old student complaints.[7] *See Jenkins*, 26 F.4th at 1250. So El-Khouri's claims proceed to trial.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED**:

1. The College's motion to strike (Doc. 43) is **GRANTED IN PART AND DENIED IN PART**:

    a. The motion is **GRANTED** as to Teresa Jones's affidavit (Doc. 37-2) and ¶¶ 25–26 of Scott Herber's affidavit (Doc. 37-1), which are **STRICKEN**.

    b. The motion is **DENIED** in all other respects.

2. The College's motion for summary judgment (Doc. 32) is **DENIED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on February 6,

---

[7] The College tries to hang its hat on Fletcher, Handfield's partner in recommending non-renewal, arguing that Fletcher previously renewed El-Khouri and he treated all faculty equally poorly. (Doc. 32, pp. 19–20.) But even if true, that does not absolve Handfield.

2025.



ROY B. DALTON, JR.
United States District Judge