UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANTHONY EL-KHOURI,

    Plaintiff,

v.                                          CASE NO. 6:23-cv-01162-RBD-RMN

EASTERN FLORIDA STATE COLLEGE,
BOARD OF TRUSTEES,

    Defendant.
_____/

## JOINT FINAL PRETRIAL STATEMENT

Plaintiff, Anthony El-Khouri ("El-Khouri"), and Defendant, Eastern Florida State College, Board of Trustees ("College") (collectively, "Parties"), by and through undersigned counsel and pursuant to the Court's Case Management and Scheduling Order (Doc. 19 ("CMSO")), file this Joint Final Pretrial Statement in advance of the jury trial set for the trial term that begins on March 3, 2025.

**I.**     **Basis of the Court's Jurisdiction**

The Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over Count I of the Complaint and Demand for Jury Trial ("Complaint") alleging national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"). The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Count II of the Complaint alleging national origin

1

discrimination in violation of the Florida Civil Rights Act, section 760.11, Florida Statutes ("FCRA").[1]

## II. Concise Statement of the Action

Plaintiff, Anthony El-Khouri, alleges that the College discriminated against him in violation of Title VII and the FCRA when it failed to renew his annual contract in April 2022. El-Khouri was a full-time instructor for the College working under an annual contract until his contract was not renewed in April 2022 for the 2022-2023 academic year. After filing a grievance with the College contesting his non-renewal, the College reinstated El-Khouri in August 2022 to his full-time instructor position and provided him with an annual contract for the 2022-2023 academic year.

El-Khouri alleges that his annual contract was not renewed in April 2022 because of national origin discrimination. The College denies that El-Khouri was subjected to national origin discrimination and asserts that it had legitimate, non-discriminatory reasons for not renewing El-Khouri's annual contract in April 2022.

## III. Concise Statement of Each Party's Position

### a. *El-Khouri's Statement of Position*

During the time period relevant to this action, El-Khouri was employed by the College as a professor. While working as an adjunct professor during the Spring of 2018, a handful of students voiced concerns they had regarding El-Khouri. The

---

[1] Notwithstanding the College's agreement on jurisdiction and despite the Court's Order (*see* Doc. 47 at pp. 10–14), the College does not waive its argument that El-Khouri failed to exhaust the administrative remedies under his Title VII and FCRA claims.

College collected the students concerns at an unknown time, but never investigated them, and El-Khouri was not given the opportunity to change them, or voice his side of the story. At the conclusion of the Spring 2018 semester, the College did not offer El-Khouri another assignment as an adjunct professor. At the time, the College did not give a reason for the decision. During the course of this lawsuit, the College claims that *the only reason* it did not renew El-Khouri's contract was due to student complaints that occurred while he was working as an adjunct professor (prior to his being hired as a full-time professor).

The College hired El-Khouri as a full-time professor pursuant to an annual contract thereafter. During the Spring 2022 semester, the College notified El-Khouri that it did not intend to renew his annual contract for employment the following school year. El-Khouri had not been subjected to any disciplinary action and consistently received positive performance evaluations. In fact, El-Khouri was excelling and was well on his way to earning a continuing contract with the College (commonly referred to as "tenure").

Other professors who were employed by the College but were not Arab or Lebanese were not treated in the same manner as El-Khouri. There are multiple other professors who received student complaints whose contracts have been renewed and others who were granted tenure despite the complaints.

Other individuals similar to El-Khouri were treated in the same disfavorable manner. Two examples are Islam Shimy, an Arab from Egypt, and Phaedra Williams,

an African American. Both Shimy and Williams were let go by the College on or within a few days of El-Khouri without cause.

Handfield, the sole decisionmaker, has a long history of discriminating against people of color. Handfield expressed her feelings to Scott Herber, El-Khouri's department chair, saying that El-Khouri's mother (who also worked for the College) was a "pain in the ass" due to her "culture." The only explanation for the College not renewing El-Khouri's annual contract for the 2022-2023 school year was discrimination on the part of the College.

    b.    *The College's Statement of Position*

El-Khouri began working for the College as an adjunct instructor on the Melbourne campus during the Spring 2018 semester. During the Spring 2018 semester, the College received several student complaints about El-Khouri's teaching. In particular, nine students complained to Barbara Kennedy, who at the time was the Assistant Provost of the Melbourne campus, about El-Khouri's performance in the classroom. These complaints were discussed with Sandra Handfield, who at the time was the Provost of the Melbourne campus and oversaw the campus' faculty members. It was then decided that the College would not ask El-Khouri to return as an adjunct instructor for the next semester.

After El-Khouri was not invited back as an adjunct instructor at the Melbourne campus, he worked as an adjunct instructor at the College's Cocoa campus for the Fall 2018 semester. During this time, the College operated under individual campus models rather than a single College model, and thus, each of the College's campuses

4

acted independently when hiring instructors. Due to this structure of the College, the concerns that the Melbourne campus administrators had with El-Khouri's teaching style were not shared with the administrators on the Cocoa campus.

Following the Summer 2019 semester, during which El-Khouri taught again as an adjunct instructor at the Cocoa campus, El-Khouri applied for and was hired as a full-time instructor at the Cocoa campus beginning with the Fall 2019 semester. Like all new full-time instructors, El-Khouri received an annual contract for the 2019-2020 academic year. For the next two years, El-Khouri received his second and third annual contracts to remain a full-time instructor with the College. El-Khouri's third annual contract, which covered the 2021-2022 academic year, was recommended by Randall Fletcher, who was the College's Vice President of Academic and Student Affairs/Chief Learning Officer.

Following a College-wide reorganization that went into effect in July 2021, Handfield became the College's Associate Vice President of Academic Affairs. In her new role, Handfield now had input into the recommendations as to whether full-time instructors should be renewed for an additional annual contract. When the time came to consider annual contract renewals for the 2022-2023 academic year, which was the first time that Handfield was involved in this process, Handfield was intimately aware of the student complaints against El-Khouri from when he was an adjunct instructor on the Melbourne campus and she was the campus Provost. Handfield shared her concerns with Fletcher about El-Khouri's teaching style and his ability to manage a class.

As a result of these concerns, a recommendation was made to President James Richey that the College should not renew El-Khouri's annual contract for the 2022-2023 academic year. President Richey approved the recommendation that was shared with him by Fletcher without any discussion. In April 2022, El-Khouri was advised of his non-renewal. For College instructors working under an annual contract, such as El-Khouri, the College is not obligated to provide an additional annual contract upon the expiration of the prior annual contract, the College is not required to provide any reason to the instructor for electing not to renew the annual contract, and the instructor does not have any expectation that he will get another annual contract the following year. In short, it is within the College's absolute management discretion to determine whether or not it will renew an instructor's annual contract as the instructor has no right to renewal or to future employment under the annual contract.

Following his non-renewal, El-Khouri filed a grievance with the College. Four months later, in August 2022, although the College denied the grievance through its customary three-step process, the College reinstated El-Khouri to his full-time instructor position and provided him with an annual contract for the 2022-2023 academic year. El-Khouri's reinstatement occurred after his Step 3 grievance hearing with Jack Parker, who is the College's Vice President for External Affairs. Prior to rendering his decision, Parker consulted with Fletcher and Handfield, who both agreed that the College should reinstate El-Khouri to his position and provide him with an annual contract for the 2022-2023 academic year.

Following his reinstatement, El-Khouri received another annual contract for the 2023-2024 academic year, which was recommended by both Handfield and Fletcher. During the 2022-2023 and 2023-2024 academic years, El-Khouri received his full contract pay and also supplemental pay for teaching supplemental courses. In April 2024, El-Khouri was awarded a continuing contract with the College, which is the equivalent of tenure.

El-Khouri's non-renewal had nothing to do with his national origin and was solely based upon the student complaints previously lodged against El-Khouri, which were first discussed during the annual contract renewal process during the Spring 2022 semester when Handfield, for the first time, became involved in this process. There is no evidence that the College's decision had anything to do with El-Khouri's national origin.

**IV. Exhibit Lists**

1. El-Khouri's Exhibit List, including the College's objections, is attached hereto as Exhibit 1.

2. The College's Exhibit List, including El-Khouri's objections, is attached hereto as Exhibit 2.

3. The Joint Exhibit List, which identifies the exhibits to be received in evidence by agreement without objection, is attached hereto as Exhibit 3.

**V. Witness Lists**

1. El-Khouri's Witness List, including the likelihood each witness will testify and the College's objections, is attached hereto as Exhibit 4.

2. The College Witness List, including the likelihood each witness will testify, is attached hereto as Exhibit 5.

## VI. Expert Witness Lists

1. Neither Party will be eliciting testimony from an expert witness.

## VII. Breakdown of the Type and Amount of Monetary Damages

1. Any lost wages that El-Khouri incurred due to not working at the College during the Summer 2022 semester less the $9,349.71 interim earnings that El-Khouri received from the Brevard County School Board. The College denies that El-Khouri is entitled to any damages for lost wages. If the jury determines that El-Khouri is entitled to damages for lost wages, such damages would be subject to an additional offset based upon any failure to mitigate his damages.

2. Any compensatory damages due to the emotional distress incurred by El-Khouri as a result of the College's non-renewal of his annual contract in April 2022. The College denies that El-Khouri is entitled to any compensatory damages.

3. Reasonable attorney's fees and costs to the prevailing party.

## VIII. Deposition Designations

1. Plaintiff intends to offer the deposition transcript of Islam Shimy in lieu of live testimony as he will be unavailable to testify at trial.

2. The College objects to El-Khouri's designation of the entire deposition of Shimy, which was taken in an unrelated proceeding. First, during the good-faith conferral conference regarding El-Khouri's intent to introduce Shimy's entire deposition, El-Khouri's counsel asserted that Shimy was unavailable to testify in

person because he would be out of the country. However, no explanation was provided as to the efforts that El-Khouri undertook to have Shimy appear in person for this trial, which has been noticed since September 5, 2023 when the CMSO was issued. Thus, Shimy should not even be considered "unavailable" as defined by the Federal Rules of Evidence. *See* Fed. R. Evid. 804(a).

Second, the College objects to El-Khouri's attempt to use Shimy's entire deposition in lieu of his live testimony on grounds that El-Khouri has failed to comply with the Court's requirements identified in the CMSO as to how deposition designations need to be specified. *See* Doc. 19 at p. 21. Specifically, El-Khouri did not identify (1) the method by which he intends to present Shimy's deposition testimony; and (2) "the specific deposition testimony by citation to page and line numbers from the deposition transcript." *See id.* As Shimy was never deposed in this proceeding, El-Khouri intends to offer Shimy's deposition testimony from the lawsuit that Shimy filed against the College. El-Khouri's failure to expressly identify the specific deposition testimony that he intends to use at trial has precluded the College from identifying additional parts of the deposition testimony to be included and from identifying any specific objections that can be raised to the deposition testimony that El-Khouri intends to use at trial.

Lastly, the College objects to El-Khouri's attempt to use Shimy's entire deposition in lieu of his live testimony on hearsay grounds. Critically, the College's motive in developing Shimy's testimony during his deposition in his lawsuit is entirely different than the motive that the College would have in cross-examining Shimy

during El-Khouri's trial. *See* Fed. R. Evid. 804(b)(1). Specifically, the questions posed to Shimy during his deposition in his lawsuit were intended to elicit answers that the College would use for discovery and other purposes in Shimy's proceeding. The College had no motive to impeach Shimy during his deposition; however, during El-Khouri's trial, it would be critical for the College to impeach Shimy and prove to the jury that the College's decision to not renew his annual contract was more than reasonable in light of the domestic violence allegations raised against Shimy by his ex-wife, who at the time was also a College employee. Thus, the College would be unfairly prejudiced if this hearsay evidence is permitted to be introduced at El-Khouri's trial as the College would not have the opportunity to cross-examine Shimy at the trial.

## IX. Concise Statement of Admitted Facts

1. El-Khouri began working for the College as an adjunct instructor on the Melbourne campus during the Spring 2018 semester.

2. El-Khouri worked as an adjunct instructor at the College's Cocoa campus for the Fall 2018, Spring 2019, and Summer 2019 semesters.

3. El-Khouri applied for and was hired as a full-time instructor at the Cocoa campus beginning with the Fall 2019 semester.

4. El-Khouri received an annual contract for the 2019-2020, 2020-2021, and 2021-2022 academic years.

5. The College did not renew El-Khouri's annual contract in April 2022 for the 2022-2023 academic year.

6. The College is not obligated to provide instructors working under an annual contract, such as El-Khouri, with an additional annual contract upon the expiration of the prior annual contract.

7. The College is not obligated to provide instructors working under an annual contract, such as El-Khouri, with any reason for electing not to renew the annual contract.

8. El-Khouri worked for the Brevard County School Board as a Biology teacher at Viera High School between August 2, 2022 and September 27, 2022.

9. El-Khouri's contract salary with the Brevard County School Board was $47,000.00 per year.

10. During El-Khouri's employment with the Brevard County School Board, he earned $9,349.71 in total wages.

11. El-Khouri's claim for lost wages in this lawsuit is subject to offset in the amount of $9,349.71 due to his interim earnings from the Brevard County School Board.

## X. Concise Statement of Agreed Principles of Law

1. The Court has subject matter jurisdiction over this action.

2. The Court has personal jurisdiction over the Parties to this action.

3. Venue is appropriate in this Court.

4. The College is an "employer" within the meaning of Title VII and the FCRA.

5. Plaintiff is an "employee" within the meaning of Title VII and the FCRA.

6. El-Khouri has the burden of proof to establish his claims in Counts I and II.

7. El-Khouri has the burden of proof to establish that the College's decision to not renew his annual contract in April 2022 for the 2022-2023 academic year amounts to an adverse employment action.

8. El-Khouri has the burden of proof to establish that his national origin was a motivating factor that prompted the College to not renew his annual contract in April 2022 for the 2022-2023 academic year.

9. The College did not have any legal obligation or duty to renew El-Khouri's annual contract for the 2022-2023 academic year.

10. Any damages that El-Khouri claims to be entitled to for his claim, if any, in Count I under Title VII are subject to the statutory caps identified in 42 U.S.C. Section 1981(a).

11. Any damages that El-Khouri claims to be entitled to for his claim, if any, in Count II under the FCRA are subject to the sovereign immunity caps in Section 768.28(5) of the Florida Statutes. *See* Fla. Stat. § 760.11(5).

12. El-Khouri is not entitled to punitive damages against the College under Title VII or the FCRA.

13. The lost wages that El-Khouri claims to be entitled to for his claim, if any, in Counts I and II are limited to any lost wages that he incurred in the Summer 2022 semester.

14. El-Khouri is not entitled to front pay or reinstatement as a remedy in this lawsuit.

15. If El-Khouri establishes his claim and any right to damages, the College is entitled to a setoff of any income for any failure on the part of El-Khouri to mitigate his damages.

16. If El-Khouri establishes his claim and any right to damages, the College is entitled to a setoff of any income earned by El-Khouri as a result of not working at the College in the Summer 2022 semester.

## XI.  Concise Statement of Issues of Fact

1. Whether El-Khouri was subjected to an adverse employment action when the College did not renew his annual contract in April 2022 for the 2022-2023 academic year.

2. Whether El-Khouri can prove that his national origin was a motivating factor in the College's decision to not renew his annual contract in April 2022 for the 2022-2023 academic year.

3. Whether the College had a legitimate, non-discriminatory reason for not renewing El-Khouri's annual contract in April 2022 for the 2022-2023 academic year.

4. Assuming arguendo that the College took El-Khouri's national origin, Lebanese, into consideration when it did not renew his annual contract in April 2022 for the 2022-2023 academic year, whether the College can prove that it would have still not renewed El-Khouri's annual contract in April 2022 for the 2022-2023

academic year even if the College had not taken his national origin, Lebanese, into account.

5. Whether El-Khouri can prove that he suffered damages because the College did not renew El-Khouri's annual contract in April 2022 for the 2022-2023 academic year, and if so, the amount.

6. Whether El-Khouri can prove that he should be awarded damages to compensate for net loss of wages incurred due to not teaching at the College in the Summer 2022 semester.

7. Whether El-Khouri is entitled to compensatory damages to compensate for emotional distress damages he incurred due to the College's non-renewal of his annual contract in April 2022 for the 2022-2023 academic year.

8. Whether the College did not invite El-Khouri back as an adjunct instructor following the Spring 2018 semester.

9. Whether El-Khouri's third annual contract, which covered the 2021-2022 academic year, was recommended by Randall Fletcher, who was the College's Vice President of Academic and Student Affairs/Chief Learning Officer.

10. Whether instructors working under an annual contract with the College, such as El-Khouri, do not have any expectation that they will get another annual contract the following year.

11. Whether El-Khouri filed a grievance with the College contesting his non-renewal.

12. Whether during the grievance process, the College reversed its decision to not renew El-Khouri's annual contract for the 2022-2023 academic year and reinstated El-Khouri in August 2022 to his previous position with an annual contract for the 2022-2023 academic year.

**XII. Concise Statement of Issues of Law**

1. Whether the College can be held liable for discrimination when it followed its appeal procedures and resolved the grievance filed by El-Khouri and decided to reinstate him to his previous position and give him another annual contract for the 2022-2023 academic year.

2. Whether the College discriminated against El-Khouri in violation of Title VII and the FCRA when the College did not renew his annual contract in April 2022 for the 2022-2023 academic year.

3. Whether El-Khouri's national origin was a motivating factor that prompted the College to not renew his annual contract in April 2022 for the 2022-2023 academic year.

4. Whether El-Khouri should be awarded damages to compensate for net loss of wages incurred due to not teaching at the College in the Summer 2022 semester.

5. Whether El-Khouri mitigated his claimed damages.

6. Whether El-Khouri should be awarded compensatory damages to compensate for emotional distress damages he incurred due to the College's non-renewal of his annual contract in April 2022 for the 2022-2023 academic year.

7. Whether either Party is entitled to an award of reasonable attorney's fees and costs at the conclusion of this case.

8. Evidentiary issues raised in Defendant's Motion in Limine and Supporting Memorandum of Law (Doc. 45, filed on January 29, 2025).

9. Whether El-Khouri's claim of national origin discrimination can be based upon being Arab. *See Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973) (emphasis added) ("The term 'national origin' on its face refers to the *country* where a person was born, or, more broadly, the *country* from which his or her ancestors came.").

10. Whether the law provides that colleges and universities are entitled to deference and discretion in determining which instructors will remain with the institution.

11. Whether the College was permitted to not renew El-Khouri's annual contract in for the 2022-2023 academic year for any reason, good or bad, fair or unfair, as long as it was not for a discriminatory reason.

12. Whether even if the College made a mistake or a bad decision in not renewing El-Khouri's annual contract in April 2022 for the 2022-2023 academic year, El-Khouri still has the burden to establish that his national origin was the motivating factor in the non-renewal decision.

13. Whether if the College prevails on the "same decision" defense, the jury should not award El-Khouri any damages for lost wages or compensatory damages. *See* 42 U.S.C. § 2000e-5(g)(2)(B)(ii).

### XIII. Pending Motions and Other Unresolved Issues

1. Defendant's Motion in Limine and Supporting Memorandum of Law (Doc. 45, filed on January 29, 2025).

### XIV. Statement of the Usefulness of Further Settlement Discussions

1. The Parties agree that further settlement discussions will not likely be useful or successful in helping the Parties to resolve this lawsuit.

### XV. Estimated Length of Trial

1. Four days.

### XVI. Certification

In preparing this final pretrial statement, I have aimed for the just, speedy, and inexpensive resolution of this action. Additionally, I have engaged in a substantive, good-faith conference regarding El-Khouri's intent to use Shimy's deposition in lieu of his live testimony and the College's objections thereto.

February 18, 2025

Respectfully submitted,

/s/ Melissa C. Mihok
Melissa C. Mihok, Esq.
Florida Bar Number 555851
melissa@mihoklaw.us
mmihoklaw@gmail.com
Mihok Law
1401 E. 22nd Ave.
Tampa, FL 33605
813-549-4550
*Counsel for Plaintiff*

/s/ Mark E. Levitt
Mark E. Levitt
Florida Bar No. 193190
mlevitt@fordharrison.com
Howard M. Waldman, Esq.
Florida Bar No. 1002881
hwaldman@fordharrison.com
FordHarrison LLP
300 South Orange Avenue, Suite 1300
Orlando, FL  32801
(407) 418-2300
*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on February 18, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF, which will send a notice of electronic filing to all counsel of record.

                                                  */s/ Mark E. Levitt*
                                                  Attorney