# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ANTHONY EL-KHOURI,

      Plaintiff,

v.                            CASE NO. 6:23-cv-01162-RBD-RMN

EASTERN FLORIDA STATE COLLEGE,
BOARD OF TRUSTEES,

      Defendant.
_____/

## JOINTLY PROPOSED JURY INSTRUCTIONS[1]

---

[1] Pursuant to the Court's Case Management and Scheduling Order, the Parties are only including "the instructions that will be given at the close of the case." *See* Doc. 19 at p. 22.

**Exhibit 7**

## JOINTLY PROPOSED JURY INSTRUCTION NO. 1
### Introduction

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.


**AUTHORITY:**    Civil Pattern Jury Instructions, U.S. Eleventh Circuit (April 2024 Edition), Section 3.1.

GRANTED:
DENIED:
MODIFIED:

**Exhibit 7**

## JOINTLY PROPOSED JURY INSTRUCTION NO. 2
**The Duty to Follow Instructions – Government Entity or Agency Involved**

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a governmental entity or agency is involved as a party must not affect your decision in any way. A governmental agency and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a governmental agency is involved, of course, it may act only through people as its employees; and, in general, a governmental agency is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the governmental agency.

**AUTHORITY:**    Civil Pattern Jury Instructions, U.S. Eleventh Circuit (April 2024 Edition), Section 3.2.3.

GRANTED:
DENIED:
MODIFIED:

**Exhibit 7**

<u>**JOINTLY PROPOSED JURY INSTRUCTION NO. 3**</u>
**Consideration of Direct and Circumstantial Evidence;**
**Argument of Counsel; Comments by the Court**

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

**AUTHORITY:**    Civil Pattern Jury Instructions, U.S. Eleventh Circuit (April 2024
Edition), Section 3.3.

GRANTED:
DENIED:
MODIFIED:

**Exhibit 7**

## JOINTLY PROPOSED JURY INSTRUCTION NO. 4
**Credibility of Witnesses**

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

**AUTHORITY:**    Civil Pattern Jury Instructions, U.S. Eleventh Circuit (April 2024 Edition), Section 3.4.

GRANTED:
DENIED:
MODIFIED:

**Exhibit 7**

## JOINTLY PROPOSED JURY INSTRUCTION NO. 5
**Impeachment of Witnesses Because of Inconsistent Statements**

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

**AUTHORITY:**   Civil Pattern Jury Instructions, U.S. Eleventh Circuit (April 2024 Edition), Section 3.5.1.

GRANTED:
DENIED:
MODIFIED:

**Exhibit 7**

## JOINTLY PROPOSED JURY INSTRUCTION NO. 6
### Responsibility for Proof – Plaintiff's Claim[s], Cross Claims, Counterclaims – Preponderance of the Evidence

In this case it is the responsibility of Dr. El-Khouri to prove every essential part of his claim by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that Dr. El-Khouri's claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against Dr. El-Khouri.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of Dr. El-Khouri's claim by a preponderance of the evidence, you should find for the College.

**AUTHORITY:**    Civil Pattern Jury Instructions, U.S. Eleventh Circuit (April 2024 Edition), Section 3.7.1.

GRANTED:
DENIED:
MODIFIED:

**Exhibit 7**

## <u>JOINTLY PROPOSED JURY INSTRUCTION NO. 7</u>
**Responsibility for Proof – Affirmative Defense**
**Preponderance of the Evidence**

In this case, the College asserts several affirmative defenses. Even if Dr. El-Khouri proves his claim by a preponderance of the evidence, the College can prevail in this case if it proves an affirmative defense by a preponderance of the evidence.

When more than one affirmative defense is involved, you should consider each one separately.

I caution you that the College does not have to disprove Dr. El-Khouri's claim, but if the College raises an affirmative defense, the only way it can prevail on that specific defense is if it proves that defense by a preponderance of the evidence.

**AUTHORITY:**     Civil Pattern Jury Instructions, U.S. Eleventh Circuit (April 2024 Edition), Section 3.7.2.

GRANTED:
DENIED:
MODIFIED:

**Exhibit 7**

## CONTESTED PROPOSED JURY INSTRUCTION NO. 8[2]
### Title VII and FCRA – Civil Rights Act – Discrimination – Including "Same Decision" Defense

In this case, Dr. El-Khouri claims that the College violated the Federal and Florida Civil Rights statutes that prohibit employers from discriminating against employees in the terms and conditions of employment because of their national origin.

Specifically, Dr. El-Khouri claims that the College did not initially renew his annual contract in April 2022 for the 2022-2023 academic year because of his national origin. **[The College proposes the inclusion of the following instruction here, to which Dr. El-Khouri objects: "In determining whether he was discriminated against because of his national origin, the jury must consider that Dr. El-Khouri's national origin is Lebanese."]**

The College denies Dr. El-Khouri's claims and asserts that the College's decision to not renew Dr. El-Khouri's annual contract in April 2022 for the 2022-2023 academic year was not because of Dr. El-Khouri's national origin. Rather, the College asserts that it had legitimate, non-discriminatory reasons unrelated to Dr. El-Khouri's national origin for the College's decision to not renew his annual contract in April 2022 for the 2022-2023 academic year.

To succeed on his claim against the College, Dr. El-Khouri must prove each of the following facts by a preponderance of the evidence:

---

[2] Although the Parties have agreed to much of this instruction, there is additional language that the College proposes to be included within this instruction to which Dr. El-Khouri objects. This contested language is bolded herein, and the Parties will identify their respective positions with this contested language immediately following the instruction.

**Exhibit 7**

First:   The College did not renew Dr. El-Khouri's annual contract in April 2022 for the 2022-2023 academic year;

Second:  The College's decision to not renew Dr. El-Khouri's annual contract in April 2022 for the 2022-2023 academic year amounts to an adverse employment action; and

Third:   Dr. El-Khouri's national origin was a motivating factor that prompted the College to not renew Dr. El-Khouri's annual contract in April 2022 for the 2022-2023 academic year.

In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues.

The Parties have agreed that the College did not renew Dr. El-Khouri's annual contract in April 2022 for the 2022-2023 academic year. This agreement is called a stipulation. You must treat this fact as proved for this case. Based on this stipulation, you must decide whether such decision by the College amounts to an adverse employment action.

To prove that the City's conduct was an adverse employment action, Dr. El-Khouri must prove that the College's decision to not renew his annual contract in April 2022 for the 2022-2023 academic year was a serious and material change in the terms, conditions, or privileges of his employment. Put another way, if the College's decision to not renew Dr. El-Khouri's annual contract in April 2022 did not have a tangible adverse effect on his employment, then he did not experience an adverse employment action.

If you find that the City's conduct amounts to an adverse employment action, you must decide whether Dr. El-Khouri's national origin was a "motivating factor" in

**Exhibit 7**

the College's decision to not renew Dr. El-Khouri's annual contract in April 2022 for the 2022-2023 academic year.

To prove that his national origin was a motivating factor in the College's decision, Dr. El-Khouri does not have to prove that his national origin was the only reason that the College did not initially renew his annual contract in April 2022 for the 2022-2023 academic year. It is enough if Dr. El-Khouri proves that his national origin influenced the decision. If Dr. El-Khouri's national origin made a difference in the College's decision, you may find that it was a motivating factor in the decision.

The College claims that Dr. El-Khouri's national origin was not a motivating factor in the decision to not renew his annual contract in April 2022 for the 2022-2023 academic year. Rather, the College claims that it had legitimate, non-discriminatory reasons unrelated to Dr. El-Khouri's national origin for its decision to not renew his annual contract in April 2022 for the 2022-2023 academic year.

**[The College proposes the inclusion of the following instruction here, to which Dr. El-Khouri objects: "Additionally, based upon Dr. El-Khouri's annual contract for the 2021-2022 academic year, the College did not have any legal obligation or duty to renew Dr. El-Khouri's annual contract for the 2022-2023 academic year. Further, the law provides that colleges and universities are entitled to deference and discretion in determining which instructors will remain with the institution."]**

**Exhibit 7**

An employer may not discriminate against an employee because of the employee's national origin. But an employer may not renew an employee's contract for any other reason, good or bad, fair or unfair. Even if an employer makes a mistake or a bad decision in not renewing an employee's contract, the plaintiff still has the burden to establish that his national origin was the motivating factor in the non-renewal. If you believe the College's reasons for its decision to not renew Dr. El-Khouri's annual contract in April 2022 for the 2022-2023 academic year, and you find that the College's decision was not motivated by Dr. El-Khouri's national origin you must not second guess the College's decision, and you must not substitute your own judgment for the College's judgment – even if you disagree with it.

If you find in Dr. El-Khouri's favor for each fact he must prove, you must decide whether the College has shown by a preponderance of the evidence that it would have not renewed Dr. El-Khouri's annual contract in April 2022 for the 2022-2023 academic year even if the College had not taken Dr. El-Khouri's national origin into account. If you find that the College would have made this same employment decision regarding Dr. El-Khouri for reasons other than his national origin, you must make that finding in your verdict.

If you find for Dr. El-Khouri and against the College on this defense, you must consider Dr. El-Khouri's compensatory damages.

When considering the issue of Dr. El-Khouri's compensatory damages, you should determine what amount, if any, has been proven by Dr. El-Khouri by a preponderance of the evidence as full, just and reasonable compensation for all of Dr.

**Exhibit 7**

El-Khouri's damages as a result of the College not renewing his annual contract in April 2022 for the 2022-2023 academic year, no more and no less. Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize the College. Also, compensatory damages must not be based on speculation or guesswork.

You should consider the following elements of damage, to the extent you find that Dr. El-Khouri has proved them by a preponderance of the evidence, and no others:

> (a) net lost wages and benefits from the date that the College decided to not renew Dr. El-Khouri's annual contract for the 2022-2023 academic year through the date that the College reinstated Dr. El-Khouri; and
>
> (b) emotional pain and mental anguish.

To determine the amount of Dr. El-Khouri's net lost wages and benefits, you should consider evidence of the actual wages he lost and the monetary value of any benefits he lost between the College's decision to not renew his annual contract in April 2022 and the College's decision in August 2022 when he was reinstated.

To determine whether and how much Dr. El-Khouri should recover for emotional pain and mental anguish, you may consider both the mental and physical aspects of injury – tangible and intangible. The emotional pain and mental anguish must have been proximately caused by the College's decision to not renew Dr. El-Khouri's annual contract in April 2022 for the 2022-2023 academic year. Emotional pain and mental anguish caused by some other action is not recoverable. Dr. El-

**Exhibit 7**

Khouri does not have to introduce evidence of a monetary value for intangible things like mental anguish. You will determine what amount fairly compensates him for his claims. There is no exact standard to apply, but the award should be fair in light of the evidence.

You are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages. For purposes of this case, the duty to mitigate damages required Dr. El-Khouri to be reasonably diligent in seeking substantially equivalent employment between May 2022 through August 2022 to the full-time instructor position he held with the College. To prove that Dr. El-Khouri failed to mitigate damages, the College must prove by a preponderance of the evidence that: (1) work comparable to the full-time instructor position he held with the College was available, and (2) Dr. El-Khouri did not make reasonably diligent efforts to obtain it. If, however, the College shows that Dr. El-Khouri did not make reasonable efforts to obtain any work, then the College does not have to prove that comparable work was available.

If you find that the College proved by a preponderance of the evidence that Dr. El-Khouri failed to mitigate damages, then you should reduce the amount of Dr. El-Khouri's damages by the amount that could have been reasonably realized if Dr. El-Khouri had taken advantage of an opportunity for substantially equivalent employment.

Additionally, you are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another must have those damages reduced by

14

**Exhibit 7**

any interim earnings that he received during the same time period. The Parties have

agreed that Dr. El-Khouri received interim earnings in the amount of $9,349.71. This

agreement is called a stipulation. You must treat this fact as proved for this case. Based

on this stipulation, you must reduce the amount of Dr. El-Khouri's damages by

$9,349.71. The fact that I am directing you to reduce any amount of damages that you

may otherwise award to Dr. El-Khouri should not be interpreted as a finding that Dr.

El-Khouri is entitled to any award of damages.

**AUTHORITY:**   Civil Pattern Jury Instructions, U.S. Eleventh Circuit (April 2024
Edition), Section 4.5 and Section II.A. and II.B. of the Annotations
and Comments; *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232,
1239 (11th Cir. 2001) ("We therefore hold that, to prove adverse
employment action in a case under Title VII's anti-discrimination
clause, an employee must show a *serious and material* change in the
terms, conditions, or privileges of employment."), *overruled on other
grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53
(2006); *Kelley v. Allegiant Air, LLC*, No. 8:23-cv-1162-WFJ-SPF,
2024 WL 4544258, at *12 (M.D. Fla. Oct. 22, 2024) ("Allegiant is
entitled to rely on a good faith belief that Plaintiff committed the
misconduct . . . and even if Allegiant were proved to be mistaken,
this mistake does not show pretext."); *Alvarez v. Royal Atl.
Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) ("The
question is whether her employers were dissatisfied with her for
these or other non-discriminatory reasons, even if mistakenly or
unfairly so, or instead merely used those complaints about Alvarez
as cover for discriminating against her because of her Cuban
origin."); *Nord v. U.S. Steel Corp.*, 758 F.2d 1462, 1469–70 (11th Cir.
1985) (quoting 42 U.S.C. § 2000e-5(g)) ("'Interim earnings . . . by
the person or persons discriminated against shall operate to reduce
the back pay otherwise allowable.'").

GRANTED:
DENIED:
MODIFIED:

**Exhibit 7**

<u>**The College's Argument and Legal Authority in Favor of**</u>
<u>**Contested Proposed Jury Instruction No. 8**</u>

I.    **"In determining whether he was discriminated against because of his national origin, the jury must consider that Dr. El-Khouri's national origin is Lebanese."**

The College takes the position that the jury should be instructed that Dr. El-Khouri's national origin in Lebanese.  Dr. El-Khouri's national origin should not be referred to as "Arab" or "Lebanese/Arab."  Arab is not a national origin as it is not a "*country* where a person was born, or, more broadly, the *country* from which his or her ancestors came."  *See Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973) (emphasis added) ("The term 'national origin' on its face refers to the *country* where a person was born, or, more broadly, the *country* from which his or her ancestors came.").  Lebanon is the country in which Dr. El-Khouri's ancestors are from, and thus, the jury should be instructed that Dr. El-Khouri's national origin claim is based upon his Lebanese national origin.  The fact that Dr. El-Khouri has advanced the claim that his national origin is "Lebanese/Arab" from the beginning of this lawsuit is of no consequence as the College was not required to raise this issue prior to the submission of these pre-trial materials.

**Exhibit 7**

II.   **"Additionally, based upon Dr. El-Khouri's annual contract for the 2021-2022 academic year, the College did not have any legal obligation or duty to renew Dr. El-Khouri's annual contract for the 2022-2023 academic year. Further, the law provides that colleges and universities are entitled to deference and discretion in determining which instructors will remain with the institution."**

The College takes the position that the jury should be instructed on two important considerations underlying the College's decision not to renew Dr. El-Khouri's annual contract in April 2022 for the 2022-2023 academic year. First, Dr. El-Khouri's annual contract with the College for the 2021-2022 academic year expressly states that

> [i]t is expressly understood and agreed by and between the parties hereto that neither the Faculty Member nor the Board owes any further contractual obligation to the other after the contract ending date set forth in Paragraph 1, except for the Faculty Member's obligation to perform uncompleted duties in accordance with Paragraph 3.

*See* Doc. 32-8 at ¶ 5. Thus, the College had no legal obligation or duty to renew Dr. El-Khouri's annual contract for the 2022-2023 academic year.

Second, the law provides that colleges and universities are entitled to deference and discretion in determining which instructors will remain with the institution. *See Nelatury v. Pennsylvania State Univ.*, No. 1:21-cv-279, 2025 WL 216320, at *8 (W.D. Pa. Jan. 16, 2025) (quoting *EEOC v. Franklin & Marshall Coll.*, 775 F.2d 110, 117 (3d Cir. 1985)) (noting the "'decision to promote or to grant tenure shall be left exclusively to this nation's colleges and universities'"); *Bell-Haynes v. Alabama State Univ.*, No. 2:21-cv-18-ECM, 2023 WL 2534738, at *13 (M.D. Ala. Mar. 15, 2023) ("The Court

**Exhibit 7**

will not quarrel with ASU's decisions to grant or deny tenure absent evidence that the decisions were intentionally discriminatory."); *Zhang v. Troy Univ.*, No. 2:11-cv-770-MHT, 2012 WL 3631547, at \*9 (M.D. Ala. July 23, 2012) ("Tenure decisions [for universities] are inherently subjective, and it is not for this court to establish Defendant's standard for granting tenure."); *Sinha v. Bd. of Trs. of the Univ. of Ill.*, No. 98-C-7275, 2001 WL 921718, at \*14 (N.D. Ill. Aug. 15, 2001) (quoting *Kuhn v. Ball State Univ.*, 78 F.3d 330, 331 (7th Cir. 1996)) (plaintiff had "an extremely difficult burden to carry" to prove pretext because of "the layered and subjective nature of the tenure process, and the courts' recognition that such decisions are based on the fine 'distinction between competent and superior achievement'"); *Vanasco v. National-Louis Univ.*, 137 F.3d 962, 968 (7th Cir. 1998) (courts are generally hesitant to second-guess "the expert decisions of faculty committees"); *Namenwirth v. Bd. of Regents of the Univ. of Wis. Sys.*, 769 F.2d 1235, 1242 (7th Cir. 1985) ("It is not our role, as federal courts have acknowledged, to consider merely the hard evidence of research output and hours spent on committee work, and reach tenure determinations *de novo*. A crucial part of the evidence we rely on is the esteem in which the candidate is held by the very persons making the tenure decision."); *Kumar v. Bd. of Trs., Univ. of Mass.*, 774 F.2d 1, 15 (1st Cir. 1985) (Campbell, C.J., concurring) ("[I]n a university setting, especially where questions of faculty tenure are involved, a court's duty to refrain from inadvertently setting up its own standards is, if anything, greater than the duty of the labor board not to impose its own business standards on the ordinary business employer," and thus,

**Exhibit 7**

"[i]t is the choice of the university, however, not of the court, that is called for in a faculty member's contract.").

It is important for the jury to hear these two instructions in a case like this where the College's defense is that, at worst, the College made a mistake in not renewing Dr. El-Khouri's annual contract in April 2022 for the 2022-2023 academic year. These additional instructions help to provide the jury with context into the factual and legal principles governing how the College makes its decisions on whether or not to renew the annual contracts of its full-time instructors such as Dr. El-Khouri.

**Exhibit 7**

### <u>Dr. El-Khouri's Argument and Legal Authority Against</u>
### <u>Contested Proposed Jury Instruction No. 8</u>

Courts have consistently found that ethnicity is a part of "national origin" under

Title VII and thus the FCRA. Further, the federal Office of Civil Rights, whose

purpose is to "coordinate[] the enforcement of equal opportunity and accessibility for

Commerce employees, job applicants, and users…" specifically found the

circumstances at bar as an example:

> A national origin group or "ethnic group," is a group of
> people sharing a common language, culture, ancestry,
> and/or other similar social characteristics. Title VII
> prohibits employment discrimination against any national
> origin group, including larger ethnic groups, such as
> Hispanics and Arabs, and smaller ethnic groups, such as
> Kurds or Roma (Gypsies). National origin discrimination
> also includes discrimination against American Indians or
> members of a particular tribe.

Website of Offic of Civil Rights, https://www.commerce.gov/cr/reports-and-

resources/discrimination-quick-facts/national-origin-

discrimination#:~:text=Title%20VII%20prohibits%20employment%20discriminatio

n,members%20of%20a%20particular%20tribe., February 18, 2025.

*See, also, Torgerson v. City of Rochester*, 643 F.2d 1031 (8th Cir. 2011); *Huri v. Office of Chief*

*Judge of the Circuit Court of Cook County*, 804 F.3d 8261 (17th Cir. 2015); *St. Francis College*

*v. Al-Zharkrazi*, 481 U.S. 604 (2022).

**Exhibit 7**

## JOINTLY PROPOSED JURY INSTRUCTION NO. 9
**Duty to Deliberate When Only the Plaintiff Claims Damages**

Of course, the fact that I have given you instructions concerning the issue of Plaintiff's damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

**AUTHORITY:**    Civil Pattern Jury Instructions, U.S. Eleventh Circuit (April 2024 Edition), Section 3.8.1.

GRANTED:
DENIED:
MODIFIED:

**Exhibit 7**

## <u>JOINTLY PROPOSED JURY INSTRUCTION NO. 10</u>
**Election of Foreperson Explanation of Verdict Form**

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

[Explain verdict]

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

**AUTHORITY:**    Civil Pattern Jury Instructions, U.S. Eleventh Circuit (April 2024 Edition), Section 3.9.

GRANTED:
DENIED:
MODIFIED:

**Exhibit 7**